UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHAUN A. JONES, | ) | NO. CV 21-4243-AB (KS) |
| | ) | |
| Plaintiff, | ) | REPORT AND RECOMMENDATION OF |
| v. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| D. TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

This Report and Recommendation is submitted to the Honorable Judge André Birotte Jr., United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.

For the reasons discussed below, the undersigned recommends that the Court GRANT Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and DISMISS Plaintiff's free exercise and deliberate indifference claims without leave to amend.

1

**INTRODUCTION**

On May 19, 2021, Shaun A. Jones ("Plaintiff"), a California state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint (the "Complaint") pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) On July 29, 2021, the Court directed service of the summons and Complaint on Defendant D. Taylor ("Defendant"), a correctional officer who is the sole defendant in this case. (Dkt. Nos. 10-13.) On April 21, 2022, Defendant filed a Motion to Strike or, in the Alternative, Dismiss Plaintiff's Complaint (the "April 21, 2022 Motion") on the grounds that Plaintiff did not sign the Complaint and failed to allege sufficient facts to state a claim for violation of the First Amendment. (Dkt. No. 30.) On May 20, 2022, in an Opposition to the April 21, 2022 Motion, Plaintiff sought leave to amend his Complaint and filed a proposed First Amended Complaint (the "FAC"), which is now the operative complaint. (Dkt. Nos. 32-33.) The Court construed Plaintiff's Opposition, devoid of any substantive arguments, as a motion for leave to file the FAC. (Dkt. No. 34 at 1.)[1] On May 23, 2022, the Court granted Plaintiff leave to amend the Complaint, denied Defendant's April 21, 2022 Motion as moot, and ordered Defendant to respond to the FAC. (*Id.* at 2-3.)

On June 1, 2022, Defendant filed a Motion to Dismiss Plaintiff's FAC (the "Motion to Dismiss"). (Dkt. No. 35.) On June 27, 2022, Plaintiff filed an Opposition to the Motion to Dismiss (the "Opposition"). (Dkt. No. 37.) On July 11, 2022, Defendant filed a Reply to Plaintiff's Opposition to the Motion to Dismiss (the "Reply"). (Dkt. No. 38.) The matter is now fully briefed and ready for decision without oral argument.

//
//
//

---

[1] The Court cites to the page numbers assigned by the Court Electronic Filing pagination system.

## THE FIRST AMENDED COMPLAINT

Plaintiff is currently an inmate at R.J. Donovan Correctional Facility in San Diego, California. (FAC at 1.) Plaintiff has brought a § 1983 civil rights action against Defendant for alleged constitutional violations that took place while he was incarcerated at California State Prison, Los Angeles County ("CSP-LAC") in Lancaster, California. (*Id.* at 1, 3-4.)

Plaintiff alleges the following. On January 13, 2020, Defendant, a California Department of Corrections and Rehabilitation ("CDCR") employee, "targeted" Plaintiff while he was exiting the prison's dining hall. (*Id.* at 1.) Defendant "demanded that Plaintiff remove his religious head wrap," deeming it "contraband," though Plaintiff states that "existing CDCR policy allows for Muslim inmates to wear religious head gear" like "turbans and kufis which are both an expression of Plaintiff [sic] religious faith." (*Id.* at 1-2.)

Defendant proceeded to handcuff Plaintiff and told him, "'so you want to fuck with me, huh'?" as he bent and squeezed Plaintiff's fingers. (*Id.* at 2.) The physical assault continued when Defendant took Plaintiff to the "privacy of the gym." (*Id.*) There, Defendant aggressively yanked on Plaintiff's head wrap with both hands in an effort to remove it. (*Id.*) Defendant effectively choked Plaintiff as he did this because "part of the turban was wrapped around Plaintiff [sic] neck." (*Id.*)

The assault continued as Defendant "pushed Plaintiff into a . . . module" and pressed his weight against Plaintiff's head and right shoulder, causing him to briefly lose consciousness. (*Id.*) As Plaintiff regained consciousness, he noticed his dislocated shoulder and asked Defendant to uncuff him. (*Id.*) Defendant threatened Plaintiff, saying "'if you turn around I'm going to fuck you up,'" backed his weight off Plaintiff, and removed his handcuffs. (*Id.*) Plaintiff then popped his shoulder into place, though he was still in extreme pain from the assault. (*Id.*) Defendant closed the module door, at which point Plaintiff "asked him to call

3

the sargeant [sic] and medical staff." (*Id.*)  Defendant did not call either and left Plaintiff in the module "for about [two] hours" as he was suffering in pain. (*Id.*)

Thereafter, Plaintiff was released from the module back to his housing unit, where he informed officers that "he needed medical attention." (*Id.*)  A nurse documented Plaintiff's injuries following the assault, noting: cuts on his left wrist; a burn on his neck; bruises on his right eye, cheek, and right shoulder; and neck and back sprains. (*Id.*)  After the medical examination, Plaintiff was called into the lieutenant's office for a video interview, during which he provided audio and visual recordings of the incident and his injuries. (*Id.*)  "[D]ue to the perpetual abuse routinely committed on inmates" at the prison, Plaintiff "suffers from frequent headaches, permanent loss of range in right shoulder, dizzy spells, memory loss and reduced cognition." (*Id.*)  Further, Plaintiff had to get x-rays, brain scans, and therapy for the injuries incurred. (*Id.*)

Plaintiff submitted thirteen exhibits with the FAC. (*See id.* at 10.)  Exhibit A is entitled "Religious Personal Property Matrix," which enumerates permitted religious clothing items and property for inmates. (*Id.* at 11.)  Exhibit J further details the types of head gear male inmates are allowed to wear and possess, listing "Kufi" as one of them, although there are restrictions on color and size. (*Id.* at 25.)  Exhibit L contains administrative appeal records. (*Id.* at 27-33.)  Nine other exhibits (Exhibits B-H, K, and M) document Plaintiff's mental and physical health after the January 13, 2020 assault and contain descriptions of the injuries he received. (*Id.* at 12-18, 26, 34.)  Further, Plaintiff submitted six declarations in Exhibit I that purportedly provide witnesses' accounts of the initial confrontation between Plaintiff and Defendant; Defendant's removal of Plaintiff's head wrap; and Plaintiff's physical injuries and psychological symptoms after the assault. (*See id.* at 19-24.)

Based on the above allegations, Plaintiff raises three distinct claims: (1) excessive use of force in violation of the Eighth Amendment; (2) burden on freedom of religious expression

4

in violation of the First Amendment ("free exercise claim"); and (3) deliberate indifference to serious medical needs in violation of the Eighth Amendment ("deliberate indifference claim"). (*See id.* at 3-4.) Plaintiff requests compensatory and punitive damages, case costs including reasonable attorney's fees, equitable relief including a hate crime investigation, and trial by jury. (*Id.* at 8.)

## THE MOTION TO DISMISS

### I.     Defendant's Arguments

In the Motion to Dismiss, Defendant contends that the FAC fails to allege sufficient facts to state a free exercise claim and a deliberate indifference claim. (Motion to Dismiss at 1.) Defendant argues that because Plaintiff cannot cure the alleged defects, leave to amend would be futile and these claims should be dismissed without leave to amend. (*See* Reply at 6, 8.)[2]

As to the free exercise claim, Defendant argues that this claim should be dismissed for two reasons. First, Plaintiff fails to establish an impermissible burden on his religious practice. (*Id.* at 6.) In particular, Defendant contends that Plaintiff fails to plead sufficient facts that demonstrate: (1) Plaintiff's head wrap was necessary or important to his religious practice (*id.*); and (2) that Defendant violated Plaintiff's rights of religious freedom on more than one occasion (*id.* at 7). Second, Plaintiff fails to establish that Defendant acted with "the requisite knowledge or intent to burden Plaintiff's practice of religion." (*Id.* at 8.) Defendant maintains that Plaintiff makes "vague and conclusory allegations" and fails to plead sufficient facts showing that Defendant's actions were *because* of the head wrap being related to Plaintiff's

---

[2]     The Motion to Dismiss does not challenge Plaintiff's excessive force claim, but Defendant notes that he "denies Plaintiff's allegations of excessive force and will respond to that claim at the appropriate time." (Motion to Dismiss at 3 n.1.)

5

religion and/or his religious practice. (*Id.* at 7-8.)  Further, Defendant argues that Plaintiff contradicts his assertions that he was targeted because of his religion by pleading that Defendant told Plaintiff to remove his head wrap in order to enforce prison regulations. (*Id.*) Finally, Defendant states that Plaintiff fails to plead facts showing that his head wrap complied with prison regulations. (*Id.* at 8.)

Defendant argues that Plaintiff's deliberate indifference claim is equally deficient and should be dismissed.  According to Defendant, Plaintiff wholly fails to plead facts that establish or even suggest that Defendant's alleged conduct in assaulting Plaintiff and the two-hour delay in treatment caused cognizable harm, which is necessary for satisfying one of the two elements of a deliberate indifference claim. (*Id.* at 9-10.)  Second, Plaintiff fails to plead "that Defendant knew of or intended to cause any such harm," which is necessary for satisfying the second element of a deliberate indifference claim. (*Id.*)

## II.     Plaintiff's Opposition

In his handwritten Opposition, Plaintiff generally argues that Defendant violated his First and Eighth Amendment rights by reiterating facts alleged in the FAC, and by alleging additional facts not contained in the FAC. (*See generally* Opposition.)[3]  With regard to the free exercise claim, Plaintiff contends for the first time in the Opposition that: (1) he wears the turban as an "expression of his Islamic faith"; (2) "defendant was aware that plaintiff was expressing his Islamic faith when he [r]ipped plaintiff [sic] turban from his head"; and (3) Plaintiff had not been violating any CDCR regulations because Defendant "did not issue plaintiff a CDCR rules violation report for wearing disapproved head wrap." (*Id.* at 2.)

---

[3]     In ruling on the Motion to Dismiss, the Court disregards the new allegations contained in the Opposition. *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *see also Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004).

Plaintiff also argues that "[i]t is well established within federal courts that Muslim inmates express their Islamic faith through their headwraps, turbans, and kufi." (*Id.*)

As to the deliberate indifference claim, Plaintiff contends that: "the denial of medical treatment caused this plaintiff to suffer in severe pain for over two hours," and "deliberate delay in treatment was due to the defendant trying to cover up his violent assualt [sic] on plaintiff." (*Id.* at 3-4.)

### III. Defendant's Reply

In the Reply, Defendant urges that the Court should dismiss Plaintiff's free exercise claim and deliberate indifference claim without leave to amend. (Reply at 8.) Defendant argues that, Plaintiff, in his Opposition, attempts to add new factual matter to support his free exercise claim, and he cannot use his Opposition to do so. (*Id.* at 2.) Further, Defendant contends that even if the Court could consider the additional factual matter included in the Opposition, Plaintiff's free exercise claim remains deficient and amendment would be futile. (*Id.*) As to the deliberate indifference claim, Defendant reiterates that the FAC lacks facts to support "that Defendant had the requisite mental state and that the delay in treatment itself caused an injury." (*Id.* at 7.) Defendant thus contends that Plaintiff's arguments in the Opposition "demonstrate that the claim[s] cannot be remedied by amendment" and these two claims should be dismissed with prejudice. (*Id.*)

## STANDARD OF REVIEW

### I. *Iqbal-Twombly* Plausibility Standard

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, FED. R. CIV. P. 12(b)(6), the Court must evaluate whether the pleading contains "a short and plain

7

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Meeting this standard requires that a plaintiff plead beyond mere labels, conclusions, and elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, a plaintiff must plead sufficient factual allegations that, when presumed to be true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678-79. The Court must first distinguish legal conclusions in the complaint from factual allegations, as the former are not entitled to the presumption of truth. *Id.* at 680-81. Next, the Court must identify the factual allegations in the complaint and determine whether they "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Under the plausibility standard, a plaintiff must plead factual allegations that cross the line "from conceivable to plausible," though they need not be probable. *Id.* When assessing plausibility, the Court must consider whether there is an "obvious alternative explanation" for the purely factual allegations. *Id.* at 567. If there is one that is "likely to be true[,] as between the two explanations," a plaintiff's entitlement to relief is devoid of plausibility. *Starr v. Baca*, 652 F.3d 1202, 1214 (9th Cir. 2011).

The plausibility analysis is "context-specific." *Iqbal*, 556 U.S. at 679. Federal Rule of Civil Procedure 8(e) states that "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(e). As such, a *pro se* complaint should be construed liberally and "held to less stringent standards" than pleadings written by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks). Further, the Court must afford the benefit of doubt to a *pro se* plaintiff, especially in a civil rights case. *See Jones v. Cmty. Redevelopment Agency of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984). If after this lenient evaluation, the Court finds that a *pro se* plaintiff has failed to state a claim, it must enumerate the "complaint's deficiencies" and give a plaintiff leave to amend, unless it is evident that the complaint's deficiencies cannot be fixed. *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623-24 (9th Cir. 1988).

/ /

The Court has broad discretion in denying leave to amend when it has already done so. *See Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014).

## II.  Elements to State a Claim Under § 1983

For a § 1983 cause of action to survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead that (1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). In this evaluation, the Court should initially set aside "[v]ague and conclusory allegations of official participation in civil rights violations." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Then, the Court should assess whether a plaintiff cites to a defendant's "specific actions, practices, or policies" to support the elements of the claim. *See id.* In this assessment, the Court may also consider documents attached to the complaint, such as exhibits. *See* FED. R. CIV. P. 10(c); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

## I.  Plaintiff's First Amendment Free Exercise Claim Fails

### A.  Legal Standard

Inmates retain certain First Amendment protections like the free exercise of religion. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987). As such, a prisoner can successfully raise a § 1983 free exercise claim by demonstrating that a government official's action substantially burdened his practice of religion. *See Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015). A substantial burden consists of more than a mere inconvenience on religious exercise. *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988

9

(9th Cir. 2006). Rather, a substantial burden requires that the challenged conduct has "a tendency" to coerce an individual into acting contrary to his religion, or significantly pressure him to change his behavior such that it violates his sincere religious beliefs. *Jones*, 791 F.3d at 1031-32 (internal quotation marks omitted); *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008).

However, a prisoner's constitutional right to free exercise of religion is ultimately limited by the "fact of incarceration" and "valid penological objectives," including but not limited to deterrence of crime and prison security. *O'Lone*, 482 U.S. at 348. The Court gives significant deference to the judgment of prison officials in evaluating the penological objectives of their challenged conduct because they are ultimately the ones trained in running the institution. *Id.* at 349. Accordingly, the Court evaluates free exercise claims under a "reasonableness" test that is less restrictive than that which is ordinarily applied to alleged constitutional rights violations. *Id.* Under this test, if the challenged conduct is shown to be "reasonably related to legitimate penological interests," it is valid. *Jones*, 791 F.3d at 1032 (quoting *O'Lone*, 482 U.S. at 349).

### B. Analysis

Defendant argues that the free exercise claim should be dismissed because Plaintiff fails to plead sufficient facts that establish (1) an impermissible burden on Plaintiff's religious practice and (2) that Defendant had the requisite knowledge or intent to burden Plaintiff's practice of religion. (Motion to Dismiss at 6-8.)

With regard to Defendant's first argument, the Court finds that Plaintiff fails to plead sufficient facts to plausibly establish that wearing his head wrap is a practice that stems from his sincerely held religious beliefs. To trigger the free exercise clause of the First Amendment, Plaintiff must demonstrate that his belief is "sincerely held" and actually religious, rather than

rooted in secular "philosophical concerns." *See Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (finding that the plaintiff's views on social security numbers were related to his status as a member of the Baptist church and derived from a portion of its holy text). While Plaintiff vaguely pleads that he is a Muslim, he fails to demonstrate that wearing a head wrap is tied to a sincere religious belief, rather than a purely secular or philosophical reason. (*See* FAC at 3.) Accordingly, Plaintiff fails to plead that Defendant's removal of the head wrap was contrary to, or violative of, his religious beliefs. *See Jones*, 791 F.3d at 1031-32.

The Court also finds that Plaintiff fails to demonstrate that Defendant has a "tendency" of coercing or pressuring inmates to violate their religious beliefs. *Id.* Plaintiff only cites to one alleged occasion of coercion, thereby failing to allege facts that demonstrate that Defendant engages in a pattern of behavior. (*See* FAC at 1-2.) "'[R]elatively short-term and sporadic'" intrusions do not constitute a substantial interference. *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998). Consequently, to the detriment of his claim, Plaintiff fails to demonstrate that Defendant's conduct substantially burdened his practice of religion, which is required to successfully raise a § 1983 free exercise claim. *Jones*, 791 F.3d at 1031-32.

With regard to Defendant's second argument, the Court finds that Plaintiff fails to plead sufficient facts that demonstrate that Defendant was acting discriminatorily, considering the "obvious alternative explanation" for Defendant's conduct—enforcement of CDCR policy because the head wrap was contraband (FAC at 1). *Twombly*, 550 U.S. at 567. While Plaintiff alleges that CDCR's "existing policy allows for Muslim inmates to wear turbans and kufis," Exhibit J enumerates limitations on head gear such as only allowing white, gray, or multicolored head gear that is a maximum size of 24" x 24". (FAC at 3, 25.) Red or blue colored head gear is not permitted. (*Id.* at 25.) Plaintiff fails to include descriptions of his head wrap's color and size anywhere in the FAC. Plaintiff could undermine the legitimacy of the alternative explanation for Defendant's conduct if he pled facts that would indicate that his head wrap was in compliance with CDCR policy. Given that such factual allegations are

11

nonexistent in the FAC, Defendant's conduct is considered valid under the reasonableness test because the removal of Plaintiff's head wrap was related to the legitimate penological interest of enforcing CDCR policy, which the Court gives deference to. *See Jones*, 791 F.3d at 1032.

Instead of pleading facts that would undermine the alternative penologically-related explanation for Defendant's conduct, Plaintiff makes broad conclusory allegations in the FAC that are unsupported by facts. (*See* FAC at 3.) For example, Plaintiff pleads that "[t]he defendant acted . . . discriminatorally [sic] in his targeting of plaintiff for no other reason other than plaintiff expressing his right to freedom of religious expression" and that Defendant's conduct was "an act of retaliation for plaintiff being a [M]uslim and freely engaging in constitutionally protected conduct of wearing religious headwrap." (*Id.*) Plaintiff fails to support these conclusory allegations that Defendant's conduct was *because of* Plaintiff's religion and/or expression of religion. *See Rhodes v. Robinson*, 408 F.3d 559, 567 ("[A] viable claim of First Amendment retaliation entails . . . [a]n assertion that a state actor took some adverse action against an inmate . . . because of . . . that prisoner's protected conduct.").

In sum, Plaintiff fails to plead facts sufficient to support a First Amendment free exercise claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. As Defendant points out, Plaintiff fails to allege sufficient facts that demonstrate (1) an impermissible burden on Plaintiff's religious practice; and (2) that Defendant burdened Plaintiff's practice of religion on the basis of religion rather than a legitimate penological interest. Accordingly, the Court recommends that the Motion to Dismiss, as to Plaintiff's free exercise claim, be GRANTED without leave to amend as it appears that any effort by Plaintiff to amend this claim would be futile.

/ /
/ /
/ /
/ /

## II. Plaintiff's Eighth Amendment Deliberate Indifference Claim Fails

### A. Legal Standard

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. A prisoner official's deliberate indifference to the serious medical needs of a prisoner, by "intentionally denying or delaying access to medical care" that results in an "unnecessary and wanton infliction of pain" is proscribed by the Eighth Amendment. *Id.* at 104-05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Ninth Circuit has set out a two-part analysis for a deliberate indifference claim that consists of an objective and subjective component. *See Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

First, to satisfy the objective component, a plaintiff "must show a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Second, to satisfy the subjective component, a plaintiff must show that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. This component "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "[A]n *inadvertent* failure to provide adequate medical care" is not sufficient to establish a deliberate indifference claim for this part of the subjective component. *McGuckin*, 974 F.2d at 1060 (quoting *Estelle*, 429 U.S. at 105). Rather, "[a] defendant must *purposefully* ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* (emphasis added). A prison official must therefore be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### B. Analysis

#### i. Objective Component: Serious Medical Need

Defendant does not refute that the allegations in the FAC satisfy the objective component. (*See* Motion to Dismiss at 8-10.) Rather, Defendant argues that Plaintiff's deliberate indifference claim should be dismissed because Plaintiff fails to plead that Defendant's alleged conduct and two-hour delay in treatment caused cognizable harm. (*See id.* at 9-10.) The Court, after giving the presumption of truth to Plaintiff's allegations, *Iqbal*, 556 U.S. at 680-81, and considering that *pro se* complaints should be construed liberally to ensure justice, *Estelle*, 429 U.S. at 106, finds that the FAC states facts sufficient to demonstrate that Plaintiff suffered a serious medical need as a result of the alleged assault.

Plaintiff pleads that, after the assault, he asked Defendant to call the sergeant and medical staff, but Defendant called neither. (FAC at 2.) As a result, Plaintiff was left in the module all alone to suffer in extreme pain for about two hours. (*Id.*) Later, when Plaintiff was examined by the nurse, she found cuts on his left wrist, a burn on his neck, bruises on his right eye, cheek, and right shoulder, and neck and back sprains. (*Id.*) Taking these factual allegations as true, the Court can reasonably infer that, immediately following the assault, Plaintiff suffered from a serious medical need. *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (noting that "indicia of a 'serious' medical need [may] include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain" (citing *McGuckin*, 974 F.2d at 1059-60)). Accordingly, the FAC alleges facts sufficient to satisfy the objective component of a deliberate indifference claim.

/ /

### ii. Subjective Component: Deliberate Indifference

Defendant argues that Plaintiff's deliberate indifference claim fails to adequately plead "that Defendant knew of or intended to cause any such harm." (Motion to Dismiss at 9-10.) As to this component of Plaintiff's claim, the Court agrees with Defendant that the FAC fails to plead facts sufficient to raise a plausible inference that Defendant was deliberately indifferent to Plaintiff's serious medical needs.

The fact that Plaintiff asked Defendant to call the sergeant and medical staff after the assault (FAC at 2) adequately alleges that Defendant was aware that Plaintiff was in "pain or possible medical need." *McGuckin*, 974 F.2d at 1060. Or, at the very least, Defendant could draw the inference that a substantial risk of serious harm existed after the assault. *Farmer*, 511 U.S. at 837. To satisfy the subjective component of a deliberate indifference claim, the FAC must demonstrate that Defendant, after being aware that Plaintiff was at a substantial risk of harm, either did something purposefully, or failed to do something, that further caused harm. *Jett*, 439 F.3d at 1061. Here, while the Court can discern no allegations to suggest that Defendant took any action to purposefully cause further harm to Plaintiff, the FAC does allege that despite Plaintiff's request for medical aid, Defendant called neither the sergeant nor medical staff. (FAC 2.) This allegation is sufficient to raise a plausible inference that Defendant deliberately failed to respond to Plaintiff's request for aid.

Thus, the question remains whether there was further harm to Plaintiff resulting from Defendant's alleged indifference. *Jett*, 439 F.3d at 1061. Defendant argues that Plaintiff does not allege any harm that specifically resulted from the alleged two-hour delay of medical care. (Motion to Dismiss at 10.) The Court agrees. While Plaintiff describes the injuries documented by the nurse after the alleged two-hour delay (i.e., his cuts, bruises, and sprains), he does not allege that any of his alleged injuries resulted from, or got worse because of, Defendant's failure to immediately summon medical care for Plaintiff. (FAC at 2.) Plaintiff

asserts that he "suffers from frequent headaches, permanent loss of range in right shoulder[,] dizzy spells, memory loss[,] and reduced cognition," resulting from "the perpetual abuse routinely committed on inmates at CSP-L[AC]." (*Id.*)  But there is nothing in the FAC that raises a reasonable inference that any of these symptoms are the result of the two-hour delay in receiving medical assistance after the alleged assault by Defendant.  Additionally, Plaintiff attaches Exhibits B-H, K, and M to the FAC, which document Plaintiff's mental and physical health after the alleged January 13, 2020 assault and contain descriptions of the injuries he incurred.  (*Id.* at 12-18, 26, 34.)  These exhibits also do not plausibly suggest that the two-hour delay caused or worsened Plaintiff's physical and/or mental condition.  (*See id.*)

Consequently, the Court finds that, while the allegations of the FAC satisfy the objective component, they do not satisfy the subjective component of a deliberate indifference claim.  Accordingly, the Court recommends that the Motion to Dismiss, as to Plaintiff's deliberate indifference claim, be GRANTED without leave to amend.

## CONCLUSION

Although leave to amend a *pro se* complaint is generally liberally granted, the Court need not grant leave to amend if amendment would be futile.  *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).  Plaintiff voluntarily amended his Complaint after Defendant filed the April 21, 2022 Motion.  (*See* FAC.)  After a thorough consideration of the allegations in the FAC, it appears that any further amendment by Plaintiff to allege facts sufficient to cure the defects in his free exercise and deliberate indifference claims would be futile.  *Ramirez*, 334 F.3d at 861.

Accordingly, for the reasons outlined above, the Court recommends that the Motion to Dismiss be GRANTED with respect to Plaintiff's free exercise claim and deliberate indifference claim, without leave to amend.

16

# RECOMMENDATION

IT IS RECOMMENDED that the District Judge issue an Order: (1) accepting this Report and Recommendation; (2) GRANTING the Motion to Dismiss as to Plaintiff's free exercise claim and deliberate indifference claim; (3) DISMISSING the FAC's free exercise claim and deliberate indifference claim without leave to amend; and (4) ORDERING Defendant to file an Answer to the FAC on the remaining claim (Claim 1: Excessive Use of Force) within fourteen (14) days of the District Judge's Order.

PLAINTIFF SHALL NOT TAKE ANY ACTION OTHER THAN FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION AND/OR FILING A NOTICE OF VOLUNTARY DISMISSAL, UNTIL THE DISTRICT JUDGE HAS ISSUED AN ORDER REGARDING THIS REPORT AND RECOMMENDATION.

DATE: July 25, 2022

_/s/ Karen L. Stevenson_
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

# NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.